# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 8368 | DATE | 12/19/2002 |
| CASE TITLE | Kathryn M. Grevas vs. Village of Oak Park | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment [38-1] is granted. Judgment is hereby entered in favor of defendant, Village of Oak Park and against plaintiff, Kathryn M. Grevas. This case is hereby dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | DEC 20 2002 date docketed |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | docketing deputy initials |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |
| RO | courtroom deputy's initials | date mailed notice |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number: 53

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KATHRYN M. GREVAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 01 C 8368 |
| ) | |
| ) | Judge Ruben Castillo |
| VILLAGE OF OAK PARK, ) | |
| ) | |
| Defendant. ) | |

DOCKETED
DEC 2 0 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff Kathryn Grevas ("Grevas") sued the Village of Oak Park, Illinois ("Village") under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, claiming that the Village discriminated against her because she suffered from depression and because of her race. Presently before the Court is the Village's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). After careful consideration, we grant the Village's motion in its entirety. (R. 38-1.)

## RELEVANT FACTS[1]

In August 1999 Grevas, a Caucasian, applied for and was offered a position as Executive Secretary in the Village's Human Resources department. (R. 39, Def.'s Facts, ¶¶ 13-15.) Rodney Marion, who is African-American, is the Director of the Human Resources department.

---

[1] The following undisputed, material facts are drawn from the parties' Local Rule 56.1 Statements of Facts and Responses. The parties present widely divergent versions of certain events underlying this lawsuit. As indicated in this opinion, to the extent that these events are not material to this Court's inquiry on summary judgment and the disputed facts do not create a material issue for trial, we have not relied on them in making our determination. *See E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000).

53

(*Id.* at ¶¶ 3, 14.) He is responsible for hiring within the department, as well as assigning duties based on the strengths of the employee and the department's needs. (*Id.* at ¶ 3.) Aside from Grevas, the department included the following individuals: (1) Marion was the Director, (*id.* at ¶ 3); (2) Colleen Temesvari, a Caucasian, was the Human Resources Representative, (*id.* at ¶ 4); (3) Phleace Crichlow, an African-American, was the Employee Relations Assistant, (*id.* at ¶ 5); and (4) Estella Sanders and Jacquelyn Jamison, who is African-American, held the position of Administrative Secretary at various times during Grevas's tenure at the Village, (*id.* at ¶¶ 6-7).

Grevas started working at the Village on September 13, 1999; the first six months of her employment were probationary and she, like other members of the Human Resources department, were not members of any collective bargaining unit. (*Id.* at ¶ 19.) Marion met with Grevas to explain her job duties and responsibilities. (*Id.* at ¶ 20.) As part of her job, Grevas was required to perform various clerical and secretarial duties, including but not limited to typing and filing Marion's correspondence, typing other department documents such as job descriptions and union contracts, and maintaining and processing Village employee forms. (*Id.* at ¶ 22.) Grevas also provided secretarial support to Crichlow and Temesvari. (*Id.* at ¶ 23.) Other qualifications of Grevas's job included establishing and maintaining effective working relationships with her co-workers, other Village departments and outside agencies. (*Id.*, Ex. 17, Executive Secretary Job Description.) Grevas reported to Marion and he periodically reviewed her performance. (*Id.* at ¶ 22.) At the end of Grevas's probationary period in March 2000 Marion allowed her to continue her employment with the Village, and also gave her a four percent salary increase. (*Id.* at ¶ 29.)

2

At some point after Grevas's probationary period, Marion began noticing problems with Grevas's performance at work. For example, Grevas was responsible for processing employee status forms, which notify the Village Payroll department of changes affecting employees' salaries or benefits. (*Id.* at ¶ 31.) In July 2000 personnel from other departments complained to Marion that employee forms processed by Grevas routinely contained errors, were submitted more than once and were often submitted late. (*Id.*, Ex. 11, Munizza Aff. ¶ 4, Ex. 12, Peters Aff. ¶ 4.) Other Human Resources department personnel also noticed shortcomings in Grevas's work; Colleen Temesvari testified in her deposition that Grevas exhibited incompetency in many areas of her work, including a lack of timeliness in executing certain forms and inefficient prioritization of office tasks. (*Id.*, Ex. 3, Temesvari Dep. at 44-46.) On one occasion, unsigned employee status forms were found in Grevas's desk when she was out sick, (*id.*, Ex. 2, Jamison Dep. at 33); because Grevas had not timely submitted the forms, some employees failed to receive earned pay increases, (*id.*, Ex. 7, Marion Aff. ¶ 28).

Grevas also began experiencing conflicts with her coworkers. Although the parties present widely divergent versions of these incidents, certain facts and inferences are undisputed. In July 2000 Jacquelyn Jamison was hired as an Administrative Secretary in the Human Resources department. (*Id.*, Ex. 2, Jamison Dep. at 6.) Jamison's duties included filing, answering phones, assisting with training and providing clerical and administrative support to the department. (*Id.*) Almost immediately conflicts arose between Jamison and Grevas regarding scheduling lunch breaks and assignment of duties, and Marion was forced to intervene. (*Id.*, Ex. 7, Marion Aff. ¶ 30; R. 48, Grevas Aff. ¶ 39). Grevas admitted that during her meeting with Jamison and Marion she was angry, stressed and frustrated and that her actions may have seemed

3

a little inappropriate. (R. 39, Def.'s Facts, Ex. 1, Grevas Dep. at 94-95.) The following day, July 20, 2000, Grevas became agitated when Marion counseled her on her interaction with Crichlow and Jamison and advised her to take the rest of the day off to calm down. (*Id.*, Ex. 7, Marion Aff. ¶ 31.) Grevas agreed that she needed to calm down. (R. 48, Grevas Aff. ¶ 40.)

The next day Grevas had an exchange with Crichlow. (*Id.* at ¶ 41.) The events between July 19 and July 21, 2000 culminated in Marion suspending Grevas with pay for three days. (R. 39, Def.'s Facts, Ex. 7, Marion Aff. ¶ 32.) Marion subsequently sent Grevas a memo, which outlined the basis of her suspension. (*Id.*, Ex. 7, Marion Aff., Ex. A, Aug. 30, 2000 Memo). According to the memo, Grevas was suspended because she refused to establish an effective working relationship with department personnel, was insubordinate to her supervisor, continued to make unfounded allegations against her coworkers, and made abusive and/or inappropriate comments towards coworkers. (*Id.*) The memo concluded by warning Grevas that any additional violations of Village policy would result in disciplinary action up to and including termination. (*Id.*) During Grevas's absence Jamison handled the employee status forms. (*Id.*, Ex. 2, Jamison Dep. at 44-45.) Marion and Temesvari noticed that Jamison processed the forms better than Grevas, so Marion reassigned this job duty from Grevas to Jamison. (*Id.*, Ex. 7, Marion Aff. ¶ 36; Ex. 3, Temesvari Dep. at 42.).

Problems continued in the department in October and November 2000. (R. 47, Pl.'s Facts, ¶¶ 55-59.) On November 9, 2000, Grevas gave Marion a memo alleging that she was being harassed by various Village employees. (R. 48, Pl.'s Facts, Ex. 2, Nov. 9, 2000 Memo.) That same day Marion submitted the memo to Assistant Village Manager Ray Wiggins and requested that Wiggins conduct an investigation into the allegations. (R. 39, Def.'s Facts, Ex. 7,

4

Marion Aff. ¶ 53.) Wiggins conducted a thorough investigation; he interviewed eight Village employees, including the seven named in Grevas's complaint, along with Grevas herself. (*Id.*, Ex. 13, Wiggins Aff. ¶ 5.) On November 10, 2000, a final exchange occurred between Marion and Grevas, which other members of the department witnessed, and which ultimately resulted in Marion sending Grevas home for the day. (*Id.*, Ex. 7, Marion Aff. ¶ 50.) Again, the parties widely dispute the particulars of the incident, but it is clear that some sort of conflict involving Grevas ensued, and there is no question that Grevas was suspended as a result of it. (*Id.*)

Wiggins completed his investigation into Grevas's harassment memo on January 31, 2001, and concluded that Grevas had not been harassed. (*Id.*, Ex. A, Jan. 31, 2001 Investigation Report.) He then began investigating the November 10, 2000 incident. He determined, based in part on Marion's suggestion, that Grevas's employment should be terminated because of her poor job performance, prior misconduct and interpersonal problems with other Village staff. (*Id.*, Ex. 7, Marion Aff. ¶ 55; Ex. 13, Wiggins Aff. ¶ 6.)

Finally, the parties dispute when the Village first became aware of Grevas's depression. Grevas asserts that Village was aware of her depression from the outset because she identified the condition on an employment form. (R. 49, Grevas Aff. ¶ 50.) The Village claims that it was not until September 2000 that Grevas informed Marion that she had a psychological disorder. (R. 39, Def.'s Facts, Ex. 7, Marion Aff. ¶ 37.) In support the Village notes that Grevas did not identify any mental illness or emotional problems during her pre-employment physical with the Village's occupational health care provider. (*Id.*, Ex. 16, Pre-employment Physical Record.) Grevas also denied having any past or present disability on a occupational hazard form during her physical. (*Id.*) In any event, Grevas acknowledges that the only potential accommodation that

5

she requested because of her alleged depression was a brief break during work to collect herself or time off from work. (R. 49, Grevas Aff. ¶ 50.) Grevas admitted in her deposition that the only occasion on which she was denied a break was after the November 10, 2000 incident, (R. 39, Def.'s Facts ¶¶ 51, 63; Ex. 1, Grevas Dep. at 359-361); instead of a break that day, Grevas was sent home.

## LEGAL STANDARDS

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). This rule "mandates an approach in which summary judgment is proper only if there is no reasonably contestable issue of fact that is potentially outcome-determinative." *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000). In resolving a motion for summary judgment, this Court will neither decide factual disputes nor weigh conflicting evidence. *Id.* Instead, this Court limits its inquiry to whether a genuine issue of material fact exists for trial. *Id.* In doing so, we view the evidence and draw all inferences in favor of the nonmoving party. But a nonmoving party cannot survive summary judgment with a mere scintilla of evidence supporting its position; the party must present definite, competent evidence to rebut the motion. *Id.* at 437 (*citing Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)).[2]

---

[2] To this end, we note that "[s]elf-serving affidavits without factual support in the record will not defeat a motion for summary judgment." *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993); *see also Keolsch v. Beltone Elecs. Corp.*, 46 F.3d 705, 708-09 (7th Cir. 1995) (concluding that plaintiff's uncorroborated deposition testimony regarding the causal link between her report of alleged sexual harassment and her termination was insufficient to preclude

## ANALYSIS

Grevas alleges that the Village discriminated against her because of her disability when it fired her and failed to reasonably accommodate her depression. Grevas also claims that the Village discriminated against her by firing her because she is Caucasian. In order to establish a claim of disability discrimination under the ADA, the plaintiff must show that: (1) she is a person with a disability as defined in the Act; (2) she was qualified for the job that she was performing; and (3) the employer terminated her because of her disability or failed to reasonably accommodate that disability. *Basith v. Cook County*, 241 F.3d 919, 926-27 (7th Cir. 2001). Because Grevas has not met her burden of showing that her major life activity of sleeping was substantially limited by her depression, her ADA claim fails.

For purposes of the ADA, a disability is a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(2). Depression can constitute a "mental impairment" under the ADA. *Krocka v. City of Chi.*, 203 F.3d 507, 512 (7th Cir. 2000). Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working, as well as sleeping. 29 C.F.R. § 1630.2(i); *see also Arnold v. Cook County*, 220 F. Supp. 2d 893, 896 (N.D. Ill. 2002). The Court must consider several factors when assessing whether an impairment is substantially limiting: (1) its nature and severity; (2) its duration or expected duration; and (3) its permanent or long-term impact or its expected impact. *See* § 1630.2(j)(2). *See also Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist.*, 133 F.3d 1054, 1058 n.5 (7th Cir. 1998). Therefore, in order for a major

---

summary judgment; court notes that the defendant amply supported its reasons for terminating her and that the plaintiff could have presented employment records, testimony from co-workers, or anything to permit the inference that she was unfairly treated).

7

life activity to be substantially limited a plaintiff must show that she, as compared to the general population, is "unable to perform a major life activity" or is "significantly restricted" as to the condition, manner or duration under which she can perform that major life activity. *Stein v. Ashcroft*, 284 F.3d 721, 728 (7th Cir. 2002).[3]

Grevas has presented insufficient evidence to meet her burden of showing that her sleeping was substantially limited by depression. Her only evidence consists of bare assertions in her affidavit and snippets of medical records. In her affidavit Grevas claims that she "suffers from chronic insomnia, and can experience little more than an hour or two of sleep every 3-4 days." (R. 48, Grevas Aff. ¶ 87.) But "[b]ald and self-serving assertions in affidavits, unsubstantiated by any documentation or other testimony, are not sufficient to create a material issue of fact as to whether an impairment has substantially limited a major life activity." *Stein*, 284 F.3d at 726 (*citing Contreras v. Suncast Corp.*, 237 F.3d 756, 764 (7th Cir. 2001)).

Nor do Grevas's medical records support the assertions made in her affidavit. The only support in the record for the existence of these physical limitations is five sleep-related remarks contained within some fifteen pages of portions of medical records dating from 1996 to 2001. Four of the references are Grevas's own subjective descriptions of her symptoms, such as "difficulty sleeping" or "poor ability to sleep." One doctor diagnosed "fatigue/malaise" in June 2000, but there is no evidence that Grevas was treated for the chronic insomnia she alleges and no information on its severity, duration or relation to her depression. In summary, there is no

---

[3] Although *Stein* was a disability suit brought under the Rehabilitation Act, the Seventh Circuit has noted that the ADA and the Rehabilitation Act are nearly identical statutes and require substantially similar proof. *See Silk v. City of Chi.*, 194 F.3d 788, 798 n.6 (7th Cir. 1999).

8

indication that her sleep problems were severe, long term, or had a permanent impact and no evidence showing whether her problems persist or are resolved, when, where or how the problems developed, how severe they were, how long they may have lasted, or whether she received medical treatment for insomnia. *See Pack v. Kmart Corp.*, 166 F.3d 1300, 1306 (10th Cir. 1999); *see also Bond v. Sheahan*, 152 F. Supp. 2d 1055, 1066 (N.D. Ill. 2001) (court rejects plaintiff's argument that she was substantially limited in the major life activity of sleeping because "the record does not indicate the severity of Plaintiff's sleeping problems, how long she experienced difficulty sleeping, or how it affected her daily life."); 29 C.F.R. app. pt. 1630, § 1630.2(j) ("temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities").

Indeed, the severity and chronic nature of Grevas's alleged insomnia is belied by other record evidence. In an April 2002 psychiatric evaluation performed pursuant to Grevas's application for disability insurance benefits, Grevas stated not only that she had trouble sleeping or getting to sleep, but also that she "sometimes sleeps too much, ten or twelve hours." (*Id.*, Ex. 23, Apr. 5, 2002 Psych. Eval.) She also stated that her daily activities include "fall[ing] asleep around 2:00 a.m. and sleep[ing] until 10:00 a.m.," thus supporting an inference that she sleeps upwards of eight hours a night. (*Id.*) Moreover, Grevas admits in her answers to interrogatories as well as her affidavit supporting summary judgment that she "often only can fall asleep with the use of medication" and that her condition is alleviated, albeit temporarily, by the use of medication. (*Id.*, Ex. 14, Grevas Answer Interrogs.; R. 49, Grevas Aff. ¶ 87.) *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999) ("A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that

9

presently 'substantially limits' a major life activity."). Thus, Grevas's disability claim fails because she presents no evidence from which a reasonable trier of fact could conclude that her alleged limitations are substantial under the ADA. *Stein*, 284 F.3d at 727.

Because we hold that Grevas cannot satisfy the first prong of her ADA case, we need not address the remaining prongs. We note, however, that even if we were to assume that Grevas is disabled within the meaning of the ADA, she cannot satisfy the remaining elements of her prima facie case. First, she was not qualified to perform the essential functions of her job. Although she was capable of performing the job requirements, she demonstrated an inability to get along with her co-workers such that her continued employment became disruptive to the work force. Moreover, she has not shown that the Village terminated her because of her disability or failed to accommodate her disability; there is ample evidence in the record that the Village fired Grevas because of her demeanor and inability to co-exist with her co-workers. In this context it makes no difference whether we accept Grevas's version of the workplace environment or the Village's. In either case, it is undisputed that Grevas could not get along with her co-workers, and Grevas has not presented a shred of evidence that these conflicts, which were the basis for her termination, were motivated by the Village's intolerance of a disability. *See, e.g., Siciliano v. Chi. Local 458-3M*, No. 95 C 6555, 1997 WL 792977, *6-7 (N.D. Ill. Dec. 18, 1997) (court concludes plaintiff was not qualified for position and suffered no adverse employment action as a result of her disability because she demonstrated an inability to get along with her co-workers and was disruptive on the job); *see also Wallin v. Minn. Dep't of Corr.*, 153 F.3d 681, 688 (8th Cir. 1998) (affirming summary judgment for defendant on plaintiff's ADA hostile work environment claim because there was no evidence that "numerous incidents of friction between

10

[plaintiff] and his co-workers" were due to his disabilities); *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986) ("Personality animosity is not the equivalent of sex discrimination and is not proscribed by Title VII."); *Riding v. Kaufmann's Dep't Store.*, 220 F. Supp. 2d 442, 461 (W.D. Pa. 2002) (court notes that although plaintiff disagreed with employer's conclusions regarding the particulars of various conflicts with numerous co-workers, "the bona fides of its determinations simply cannot be doubted" because plaintiff cannot show she satisfied the criterion identified by Kaufmann's as necessary to her job— the ability to manage so as to minimize, rather than foster, tension and conflict—or that Kaufmann's did not in fact rely upon her perceived deficiencies in "people development" skills in making its employment decision). Accordingly, Grevas's ADA claim fails.

Grevas's claim that she was terminated and subjected to a hostile work environment because she is Caucasian fares no better. Grevas did not provide any direct evidence of reverse race discrimination, so we must rely on the burden-shifting method established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). Under the traditional formulation of the *McDonnell Douglas* test, a plaintiff establishes a prima facie case by showing that: (1) she is a member of a protected class; (2) she was meeting the employer's legitimate employment expectations; (3) she suffered an adverse employment decision; and (4) the employer treated similarly situated employees more favorably. *Grayson v. O'Neill*, 308 F.3d 808, 817-18 (7th Cir. 2002). If the plaintiff establishes these elements, the burden shifts to the defendant to articulate legitimate, nondiscriminatory reasons for its employment action. *Id.* at 818. The plaintiff then must cast doubt on whether these reasons are credible, or whether they are merely pretext for discrimination. *Id.* In a reverse discrimination case, however, the first prong of Plaintiff's prima

facie case is altered to require, in lieu of a showing that the plaintiff is a member of a protected class, a showing of at least one background circumstance giving rise to inference of discrimination, such as an employee being clearly more qualified than the person ultimately hired or the employer expressing intense interest in hiring a person from protected class. *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 454, 457 (7th Cir. 1999); *see also Phelan v. City of Chi.*, No. 99 CV 40, 2002 WL 31204784, *4 (N.D. Ill. Oct. 1, 2002).

In its memorandum supporting summary judgment, the Village argues that Grevas presents no evidence that background circumstances giving rise to an inference of reverse discrimination existed. The Village further argues that Grevas was not meeting legitimate job expectations, as evidenced by her suspensions and the complaints from other Village departments. Finally, the Village notes that Grevas has not identified any similarly situated non-Caucasian employees who were treated more favorably. In her complaint, Grevas alleged that Jacquelyn Jamison, Malinda Gaylord and Tina Brown—all African-American Administrative Secretaries at the Village—were treated more favorably. But these employees occupied different positions and, with respect to Gaylord and Brown, were employed in different departments, so they cannot be considered similarly situated. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000).

Grevas devotes less than a page to countering these arguments in her response, summarily asserting without any support from or citation to the record that (a) "the Village unfairly accepted the position of Ms. Grevas' co-workers, who are African American;" (b) she was adequately performing her job; (c) she was treated less favorably than similarly situated African-American employees; and (d) the Village lacked a legitimate, non-discriminatory reason for firing her. She

12

contends on these meager assertions that she is "entitled to have the trier of fact review this evidence, evaluate the credibility of the witnesses and reach a decision on these fundamental questions of fact." (R. 46, Pl. Resp. at 10-11). We disagree. It is Plaintiff's burden to show that she could make her prima facie case, and she must do so with credible evidence from the record. The Seventh Circuit has noted that summary judgment is the "put up or shut up" moment in a lawsuit, when a party "must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999). As discussed above, bald assertions in an affidavit will not suffice to meet this burden or place material fact issues in dispute for trial when those elements cannot be satisfied by such proof. *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Wagner v. Access Cash Int'l, Inc.*, 212 F. Supp. 2d 886, 891 (C.D. Ill. 2002) (court notes that if plaintiff could have tendered witnesses to substantiate ADEA claim, he should have offered these witnesses' depositions and/or affidavits in response to defendant's motion for summary judgment; a plaintiff cannot, in the face of a summary judgment motion, assume that a trial will be held at which time he may prove his case); *Vandeveer v. Fort James Corp.*, 192 F. Supp. 2d 918, 931-32 (E.D. Wis. 2002) (granting summary judgment to defendant where although plaintiff had "mustered a great deal of indignation and conclusory allegations in her moving papers, she has failed to identify evidence relevant to at least two of the elements of her case, perhaps in the mistaken belief that she could later do so at trial if the court found a trial to be required."); *Nwangwa v. Fed. Express Corp.*, No. 00 C 3709, 2001 WL 1646569, *4 (N.D. Ill. Dec. 20, 2001). Grevas has not put up *any*

evidence, aside from her own affidavit, to support the first, second and fourth prongs of her prima facie case.[4] Accordingly, summary judgment is warranted on this claim as well.

## CONCLUSION

Although we are sympathetic to Grevas as an employee who sincerely believes that she was treated shabbily by her former employer, these feelings do not translate into a viable claim of disability and race discrimination that should proceed to trial. Grevas simply has not adduced sufficient evidence to create a material fact issue from which a reasonable jury could rule in her favor, and thus the undisputed facts do not allow Grevas to avoid defendant's motion for summary judgment in its favor. Grevas's ADA claim fails because she has not shown that her depression substantially limited her major life activity of sleeping. Consequently, Grevas is unable to show that she is disabled under the ADA, an essential prong of her prima facie case. In addition, Grevas has not met her burden of establishing a prima facie case of reverse race discrimination under Title VII. She has not shown any background circumstances from which we may conclude that the Village engaged in reverse discrimination against Caucasians. Nor has she shown that she was meeting the Village's legitimate expectations or that other similarly

---

[4] Even if Grevas's own assertion in her affidavit that she was performing satisfactorily were sufficient to satisfy the second prong of her prima facie case, such assertions would not be sufficient to withstand a pretext analysis. *See, e.g., Campbell v. Fasco Indus., Inc.* 861 F. Supp. 1385, 1399 (N.D. Ill. 1994) (as opposed to prima facie stage, plaintiff's own assertions that he was performing satisfactorily are entitled to little, if any, weight at pretext stage because the employee's burden at the latter stage is "infinitely more rigorous."). Thus, even if we were to assume *arguendo* that Grevas had met her prima facie case and shift the burdens, Grevas's claim would nonetheless fail because her affidavit evidence would not be sufficient to establish that the Village's reasons for firing her were pretextual.

situated employees were treated more favorably. Accordingly, we grant the Village's motion for summary judgment. (R. 38-1.)

ENTERED: _____

Judge Ruben Castillo
United States District Court

Dated: December 19, 2002